UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| REMBRANDT GAMING TECHNOLOGIES, LP., <br><br> Plaintiff, <br><br> v. <br><br> BOYD GAMING CORPORATION, *et al.*, <br><br> Defendants. | Case No. 2:12-cv-775-MMD-GWF <br><br> ORDER |

This Order addresses the disputed claim terms presented for the Court to construe in connection with the patent infringement claim filed by Rembrandt Gaming Technologies, LP ("Rembrandt"). The Court has reviewed the Joint Claim Construction and Prehearing Statement (dkt. no 130), Rembrandt's opening brief (dkt. no 142), Defendants' response (dkt. no. 145), and Rembrandt's amended reply (dkt. no. 153). The Court also heard argument on November 16, 2015. (Dkt. no 183.)

**I.   BACKGROUND**

Rembrandt originally filed this patent infringement suit on May 5, 2012. (Dkt. no. 1.) Defendants operate a number of video slot machine games that Rembrandt alleges infringe on its "Electronic Second Spin Slot Machine" patent, U.S. Patent No. 6,641,477 ("the '477 patent").[1] (*Id.*) The '477 patent covers a method for using a slot machine, or other similar device, wherein certain symbols can be respun. The suit was stayed while

---

[1] A copy of the '477 patent is filed as dkt. no. 142-1.

Defendants sought *ex parte* reexamination of the '477 patent with the United States Patent and Trademark Office ("PTO"). (Dkt. no. 73.) After reexamination, Plaintiff asserts claim 32 of the '477 patent. (Dkt. no. 130.)

## II.   LEGAL STANDARD

Patent claim construction is a question of law for the Court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). When interpreting claims, a court's primary focus should be on the intrinsic evidence of record, which consists of the claims, the specification, and the prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314-17 (Fed. Cir. 2005) (en banc). The court should begin by examining the claim language. *Id.* at 1312. Claim language should be viewed through the lens of a person of "ordinary skill in the relevant art at the time of the invention." *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1283 (Fed. Cir. 2005). If the claim language is clear on its face, then consideration of the other intrinsic evidence is limited "to determining if a deviation from the clear language of the claims is specified." *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001).

A court should give the claim's words their "ordinary and customary meaning." *Phillips*, 415 F.3d at 1312-13 (quotation omitted). In construing a claim term's ordinary meaning, the context in which a term is used must be considered. *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003). Both asserted and unasserted claims of the patent also can add meaning to a disputed claim term as claim terms normally are used consistently throughout the patent. *Phillips*, 415 F.3d at 1314.

"[C]laims must be read in view of the specification, of which they are a part." *Phillips*, 415 F.3d at 1315 (quotation omitted). The specification can offer "practically incontrovertible directions about a claim meaning." *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009). "When consulting the specification to clarify the meaning of claim terms, courts must take care not to import limitations into the claims from the specification." *Id.* "[A]lthough the specification may well indicate that certain embodiments are preferred, particular embodiments appearing in the specification will

not be read into claims when the claim language is broader than such embodiments." *Tate Access Floors, Inc. v. Maxcess Techns., Inc.*, 222 F.3d 958, 966 (Fed. Cir. 2000) (quotation omitted). "By the same token, the claims cannot enlarge what is patented beyond what the inventor has described in the invention." *Abbott Labs.*, 566 F.3d at 1288 (internal quotation omitted). "Likewise, inventors and applicants may intentionally disclaim, or disavow, subject matter that would otherwise fall within the scope of the claim." *Id.* at 1288.

In addition to the specification, a court should consider the patent's prosecution history, which consists of "the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. However, because the prosecution represents an "ongoing negotiation" rather than the "final product" of the negotiation, "it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* Consulting the prosecution history can, however, be helpful in determining whether the patentee disclaimed an interpretation during prosecution. *Research Plastics, Inc. v. Federal Packaging Corp.*, 421 F.3d 1290, 1296 (Fed. Cir. 2005). "Under the doctrine of prosecution disclaimer, a patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution." *Purdue Pharma L.P. v. Endo Pharm. Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006).

If the claim language is not clear after reviewing all intrinsic evidence, then the Court may refer to extrinsic evidence such as expert testimony, inventor testimony, dictionaries, and learned treatises. *Zodiac Pool Care, Inc. v. Hoffinger Indus., Inc.,* 206 F.3d 1408, 1414 (Fed. Cir. 2000). Here, the Court has not considered any extrinsic evidence. The Court finds that the claim language is clear after reviewing the intrinsic evidence. Moreover, the parties rely primarily on the intrinsic evidence to support their proposed constructions.

///

///

## III. DISCUSSION

The parties have narrowed the contested claim terms in claim 32 of the '477 patent to two: "initial symbols" and "designating a chosen number from one to all." (Dkt. no. 183.) Summaries of their proposed construction of each disputed term are presented in comparison charts below. The Court will address each of the disputed terms.

### A. "Initial Symbols"

The parties dispute the meaning of the term "initial symbols" as used in claim 32.

| Plaintiff Rembrandt's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| set of symbols from which one or more symbols is identified for replacement | symbols resulting from the machine's first draw/spin |

Claim 32 relates to the method of operating a gaming machine (typically a slot machine) in a manner which allows some of the symbols to be respun. The claim makes reference to both "initial symbols" and "replacement symbols." According to Rembrandt, the word "initial," as it appears in this claim, is best understood as a description of a symbol's position relative to replacement symbols. Rembrandt argues that its construction is supported by the intrinsic evidence, specifically the wording of claim 32 itself and the specification. (Dkt. no. 142 at 13.) With respect to the specification, Rembrandt contends that one embodiment, which involves multiple rounds of respins, supports their proposed construction because it allows for the possibility of respins. (*Id.* at 14.)

Defendants agree that initial symbols must be selected before replacement symbols, but contend that Rembrandt's construction is too broad. Defendants argue that Rembrandt's construction effectively removes the term "initial" from the claim and is unsupported by the abstract and specification. In turn, Defendants argue that their construction, which includes reference to a first spin or draw, construes the phrase more accurately because it gives meaning to the word "initial." Defendants also note that the abstract describes a "method of use which allows a player to completely replace up to all

of the initial symbols displayed *after the first draw*." (Dkt. no 154 at 11.) Defendants also point to Figure 5, which they say shows that initial symbols appear after the first spin or draw. (*Id.* at 12.) According to Defendants, their proposed construction also allows for the possibility of multiple respin rounds and is therefore consistent with the specification Rembrandt cites. (*Id.* at 13.)

The Court finds that Defendants' proposed construction is supported by the claim language and the intrinsic evidence. Rembrandt's proposed construction renders the term "initial" superfluous. Defendants' construction is consistent with the wording in claim 32 and evidence from the specification. The applicant's summary in the '477 patent describes a slot machine that allows the player "to completely respin one or more of the symbols displayed *after the first spin* in order to create, improve, or even lose a winning combination." (The '477 patent at 2:34-37 (emphasis added).) Furthermore, Figure 5 includes a flowchart which seems to indicate that initial symbols are produced after 1) a player has credit and 2) a player inputs a command to deal or draw. (Dkt. no. 142-1 at 7.)

Rembrandt's concern that this construction mistakenly reads a wager requirement into the claim is misplaced. The accepted construction — "symbols resulting from the machine's first draw/spin" — makes no reference to the existence of a wager. A first draw or spin might also be understood in circumstances like bonus rounds or extra spins. The question in those situations would be what constitutes a first spin or draw, and the answer would seemingly depend on the details of how the bonus rounds were constructed — an inquiry wholly separate from the Court's task of construing the term at this stage.

The Court therefore holds that the term "initial symbols" in claim 32 means "symbols resulting from the machine's first draw/spin."

///
///
///

### B. "Designating a chosen number, from one to all, of said initial displayed symbols for replacement"

The parties dispute the meaning of the term "designating a chosen number, from one to all, of said initial displayed symbols for replacement" that appears in claim 32.

| Plaintiff Rembrandt's Proposed Construction | Defendant McNulty's Proposed Construction |
|---|---|
| identifying at least one individual (single) symbol from said initial displayed symbols to be replaced by respin | a player designating a chosen number, from one to all, of said initial displayed symbols for replacement |

The main point of contention between the parties is whether this term should be understood to require a human to designate symbols for replacement, or whether the term would also apply to the slot machine itself designating symbols for replacement.[2]

Rembrandt argues that the plain language of claim 32 contains no limitation requiring a player to designate symbols for replacement. Rembrandt further argues that the specification indicates that symbols could be automatically respun in certain instances, including when a replacement symbol is identical to the symbol it is replacing, and that this feature demonstrates that automatic respins were contemplated by the '477 patent. (Dkt. no. 142 at 16.) Rembrandt's final argument, and perhaps its strongest, is that the applicant amended several claims to include the term "allowing a player to designate a chosen number," but did not make a similar change to claim 32. (*Id.* at 16-17.) According to Rembrandt, this is clear evidence of the inventor's intent. To bolster their argument, Rembrandt calls the Court's attention to the Examiner's notation during the *ex parte* reexamination of the '477 patent that "the limitation of the player being allowed to pick a designate [sic] number of replacement symbols…is not a limitation of either of the independent claims 32 or 34." (*Id.* at 17.)

Defendants counter that Rembrandt's claim differentiation argument is inapplicable, and that, regardless, there is clear evidence that the inventor intentionally

---

[2] The parties also dispute the term "one to all." The Court finds that the plain and ordinary meaning of this term is clear and requires no construction.

disavowed machine designation as part of the scope of his claim. In support of its disavowal argument, Defendants point to both the specification and the prosecution history of the '477 patent. Defendants cite instances wherein the inventor described the "present invention" as a machine that allows "a player" to respin symbols. (Dkt. no 145 at 17.) The summary of the invention declares "[t]he present invention provides an electronic slot machine which allows *a player* to completely respin one or more of the symbols displayed after the first spin…." (*Id.*) A similar description appears in the area describing the technical field of the invention. (*Id.*) Defendants also note that the '477 patent only contains embodiments where the player selects symbols for respin.

According to Defendants, the prosecution history also includes clear evidence of disavowal. Defendants believe that the applicant's repeated assertion that his invention is a game of skill, involving freedom of choice for the player, clearly limits the scope of the claim to human designation. (*Id*. at 24-26.) Defendants posit that one clear example of this assertion is in the applicant's July 2, 2002, Amendment and Interview Summary, where he describes his invention's uniqueness to the Examiner by arguing that "none of the slot machine prior art allowed the player to individually pick and choose from Applicant's range of replacement capabilities … This 'freedom of choice' is an important distinction between Applicant's invention and the prior art." (Dkt. no. 145-5 at 19-20.)

The Court finds that the language of the claim is not clear on its face. Rembrandt has offered a plausible reading in which the slot machine itself is understood to be the subject of each of the gerunds that begin the steps in claim 32. (Dkt. no. 153 at 11.) Hence, in Rembrandt's reading, the machine is the one selecting, displaying, designating, replacing, determining, and rewarding. While Rembrandt's construction is consistent with the wording of claim 32, it is not clear from the plain language of the claim that it is the only possible understanding. Therefore the Court must look to the specification and the prosecution history in order to construe the disputed term.

The language in the specification, when considered with the prosecution history, clearly limits the scope of the patent to player designation and evidences clear disavowal

or disclaimer. In his summary of the invention, the applicant describes his invention as "an electronic slot machine which allows *a player* to completely respin one or more of the symbols displayed after the first spin in order to create, improve, or even lose a winning combination." (The '477 patent at 2:32-37 ) (emphasis added).) A similar description appears in the abstract: "An electronic slot machine and method of use which allows *a player* to completely replace up to all of the initial symbols displayed after the first draw in order to create, improve, or even lose a winning combination." (Dkt. no. 142-1 at 2 (emphasis added).) Throughout the specification, the inventor emphasized that his invention allows the player to select the best box for respin and to "think in multiple dimensions" and described the invention as a "game of skills" rather than a "game of chance." (The '477 patent at 8:32-39; 2:26-31.) The Federal Circuit has recognized that descriptions such as "the present invention includes," like the descriptions recited above, can constitute disavowal or disclaimer. *See*, *Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021, 1024 (Fed. Cir. 2015). Similarly here, the language in the specification clearly alerts the reader that the scope of the invention is limited to player designation. This conclusion is further supported by the fact that the '477 patent does not teach how a machine would designate symbols — seemingly an important step if machine designation were part of the method claim.

This construction is also supported by the prosecution history. The applicant repeatedly distinguished his invention from the prior art by arguing that it gives the player freedom to choose symbols, which in turn transformed the game into a game of skill. (Dkt. nos. 145-4 at 11, 42; 145-5 at 2, 19-20, 53.) Machine designation removes any element of skill from the game and is therefore inconsistent with the applicant's prior assertions.

The Court acknowledges that the PTO examiner, in the *ex parte* reexamination which occurred while this case was stayed, noted "the limitation of the player being allowed to pick a designate number of replacement symbols is only recited in claim 1, and is not a limitation of either of independent claims 32 or 34." (Dkt. no. 142-2 at 29.)

The Court does not, however, find this notation particularly helpful. The Examiner did not elaborate any further on this point or preemptively address any of the arguments that Defendants have raised. While Rembrandt is correct to point out the value of neutral third-party evaluations in the context of a *Markman* hearing, this particular piece of evidence does not provide much guidance to the Court, let alone persuade the Court to construe the term to reflect the Examiner's observation.

For these reasons, the Court agrees with Defendants' proposed construction. Therefore, the Court construes the term "designating a chosen number, from one to all, of said initial displayed symbols for replacement" in claim 32 to mean "a player designating a chosen number, from one to all, of said initial displayed symbols for replacement."

## IV.     CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of this claim construction.

It is so ordered.

DATED THIS 24th day of November 2015.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE